**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 23-1661

JAKE'S FIREWORKS INC.,

      Plaintiff – Appellant,

v.

UNITED STATES CONSUMER PRODUCT SAFETY COMMISSION; ALEXANDER HOEHN-SARIC, in his official capacity as Chairman of the CPSC,

      Defendants – Appellees.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Theodore D. Chuang, District Judge. (8:21-cv-02058-TDC)

Argued: May 8, 2024                                                                 Decided: June 26, 2024

Before DIAZ, Chief Judge, WILKINSON, Circuit Judge, and MOTZ, Senior Circuit Judge.

Affirmed by published opinion. Judge Motz wrote the opinion, in which Chief Judge Diaz and Judge Wilkinson joined.

**ARGUED:** Oliver J. Dunford, PACIFIC LEGAL FOUNDATION, Palm Beach Gardens, Florida, for Appellant. Daniel Tenny, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. **ON BRIEF:** Damien M. Schiff, Sacramento, California, Molly E. Nixon, PACIFIC LEGAL FOUNDATION, Arlington, Virginia; Timothy L. Mullin, Jr., Dwight W. Stone II, MILES & STOCKBRIDGE PC, Baltimore, Maryland, for Appellant. Brian M. Boynton, Principal Deputy Assistant Attorney General, Cynthia A. Barmore, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE,

Washington, D.C.; Erek L. Barron, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellees.

DIANA GRIBBON MOTZ, Senior Circuit Judge:

Jake's Fireworks Inc., a large importer and distributer of consumer fireworks, seeks judicial review of several warning notices it received from the U.S. Consumer Product Safety Commission. The district court dismissed the complaint after determining that the notices do not constitute final agency actions under the Administrative Procedure Act. For the reasons explained below, we affirm.

I.

Congress created the Consumer Product Safety Commission ("the Commission" or "the agency") in 1972 "to protect the public against unreasonable risks of injury associated with consumer products." *See* 15 U.S.C. §§ 2051(b)(1), 2053(a). The Commission is composed of up to five Commissioners, each appointed by the President and confirmed by the Senate. *Id.* § 2053(a). The Commission regulates consumer fireworks under the Federal Hazardous Substances Act and the Consumer Product Safety Act. *See id.* §§ 2079, 1261(q)(1)(B), 1263(a); *id.* § 2068(a)(1), (2)(D); *see also* 16 C.F.R. pt. 1507 (safety regulations for fireworks). The staff of the Commission includes the Office of Compliance and Field Operations ("Compliance Office"), which aids in investigatory and enforcement matters and provides guidance to industry on complying with product safety rules. *See* 16 C.F.R. § 1000.21.

Jake's Fireworks Inc. ("Jake's Fireworks") is a large importer and distributor of consumer fireworks. From 2014 to 2018, the Commission's staff sampled fireworks imported by Jake's Fireworks. About one-third of those samples indicated that the

3

fireworks were dangerously overloaded with explosive material, rendering them "banned hazardous substances" under the agency's regulations. *See* 16 C.F.R § 1500.17(a)(3); *see also* Govt. Br. at 5, 11.

The Commission's Compliance Office accordingly sent Jake's Fireworks several "Notice[s] of Non-Compliance." *E.g.*, J.A. 102.[1] These Notices, though worded slightly differently, all informed Jake's Fireworks of test results indicating that the fireworks were banned hazardous substances. The Notices then stated that "the staff requests that the distribution of the sampled lots not take place and that the existing inventory be destroyed." *E.g.*, J.A. 165. Each Notice also set forth a procedure for documenting the destruction of the fireworks if Jake's Fireworks "chose to destroy the goods" in question, and provided a 90-day deadline by which to do so. *E.g.*, J.A. 103. The Notices concluded by warning of potential statutory penalties, including civil fines and criminal liability, for distributing and selling banned hazardous substances.

Jake's Fireworks, not pleased with this advice, has twice sought to obtain judicial review of it. First, in 2019, Jake's Fireworks sued the Commission in federal court, seeking injunctive and declaratory relief from the agency's enforcement of its fireworks regulations via the Notices. The district court determined that the Notices did not rise to the level of reviewable final agency actions under the Administrative Procedure Act because the Notices did not consummate the Commission's decisionmaking process. *See Jake's Fireworks Inc. v. U.S. Consumer Prod. Safety Comm'n*, 498 F. Supp. 3d 792, 806–07

---

[1] Citations to "J.A. __" refer to the Joint Appendix filed by the parties in this appeal.

4

(D. Md. 2020). In reaching this conclusion, the court relied on two rationales. First, the court noted that Jake's Fireworks could request an informal hearing with the Compliance Office to seek reconsideration of the Notices. *Id.* at 803, 806. Second, the court determined that the Commission, not its Compliance Office, had final decisionmaking authority on whether to pursue legal enforcement. *Id.* at 803. Because the Notices thus represented only the "intermediate ruling[s] of a subordinate official," the court dismissed the lawsuit without prejudice for lack of jurisdiction. *Id.* at 803, 807.

Following the dismissal of its first lawsuit, Jake's Fireworks in November 2020 requested an informal hearing with the Compliance Office to contest the Notices. The Compliance Office declined to hold a hearing or to revisit its findings, and advised Jake's Fireworks that the Notices expressed only "an initial determination in the Commission's process." J.A. 318. The Compliance Office also stated that the Commission had made no final determination on whether the products violated the prohibition of dangerously overloaded fireworks at 16 C.F.R. § 1500.17(a)(3).

In response, Jake's Fireworks again filed suit — this action — once more challenging the Commission's supposed enforcement of its fireworks regulations via the Notices, and claiming it had been unable to sell more than $2.6 million dollars' worth of fireworks for fear of penalties. The district court again determined that the Notices did not constitute reviewable final agency actions because they "only request voluntary compliance" and because the Compliance Office could not independently pursue enforcement. *Jake's Fireworks Inc. v. U.S. Consumer Prod. Safety Comm'n*, No. 8:21-cv-02058-TDC, 2023 WL 3058845, at *8 (D. Md. Apr. 24, 2023). The court dismissed the

5

lawsuit without prejudice. *Id.* at *9. Jake's Fireworks's timely appeal of the dismissal of its second lawsuit is now before us.

II.

The only question presented is whether the Notices constitute reviewable final agency actions.

A.

The Administrative Procedure Act ("APA") waives the federal government's sovereign immunity "to permit judicial review of only 'final agency action[s].'" *Nat'l Veterans Legal Servs. Program v. U.S. Dep't of Def.*, 990 F.3d 834, 839 (4th Cir. 2021) (quoting 5 U.S.C. § 704). Because "sovereign immunity is jurisdictional in nature," finality under the APA is a jurisdictional requirement. *City of New York v. U.S. Dep't of Def.*, 913 F.3d 423, 430 (4th Cir. 2019) (quoting *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)) (cleaned up). We thus review the district court's finality determination de novo. *Id.*

An agency action must satisfy two conditions in order to be deemed "final" under the APA: "First, the action must mark the *consummation* of the agency's decisionmaking process — it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016) (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)) (emphasis added). An action must meet both prongs of the *Bennett* test to be final. *Golden & Zimmerman, LLC v. Domenech*, 599 F.3d 426, 432 (4th Cir. 2010).

We "first look" to the statutes and regulations that govern the agency action at issue to determine whether it is final. *See, e.g.*, *Flue-Cured Tobacco Coop. Stabilization Corp. v. EPA*, 313 F.3d 852, 858 (4th Cir. 2002). When examining the consummation prong of *Bennett*, "[t]he decisionmaking processes set out in an agency's governing statutes and regulations are key to determining whether an action is properly attributable to the agency itself and represents the culmination of that agency's consideration of an issue." *Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1267 (D.C. Cir. 2018). An action that is "informal, or only the ruling of a subordinate official, or tentative" ordinarily does not conclude an agency's decisionmaking process. *Id.* (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 151 (1967)).

The Compliance Office's Notices of Noncompliance are not final — they do not "mark the consummation of the agency's decisionmaking process." *See Hawkes*, 578 U.S. at 597 (cleaned up). It is the Commission itself, not its Compliance Office, that makes final determinations on whether goods are banned hazardous substances under the Federal Hazardous Substances Act and the Consumer Product Safety Act. *See* 15 U.S.C. §§ 1274(a)–(b), 2064(c)–(d). Only the Commission itself may vote to authorize an administrative complaint seeking to compel a firm to take corrective action. 16 C.F.R. § 1025.11(a). Only the Commission itself may refer matters to the Department of Justice for potential civil or criminal enforcement in court. *See* 15 U.S.C. § 2076(b)(7). Furthermore, the Commission takes these actions in consultation with the Office of the General Counsel, *see* 16 C.F.R. § 1000.14, and typically only after providing regulated

7

parties with notice and an opportunity to be heard, 15 U.S.C. §§ 1266, 1274(e), 2064(f); 16 C.F.R. § 1119.5.

The Commission's regulatory scheme provides its Compliance Office with a role that is subordinate, investigatory, and advisory to the Commission. The Compliance Office's responsibilities include "develop[ing] surveillance strategies and programs designed to assure compliance," "conduct[ing] inspections and in-depth investigations," "identifying and addressing safety hazards in consumer products," and "promoting industry compliance with existing safety rules." 16 C.F.R. § 1000.21. Notices of Noncompliance fit squarely within the Compliance Office's advisory and investigatory functions. As the agency's Handbook guide explains, a Notice of Noncompliance "informs the firm of the specific product and violation that has occurred; requests that the firm take specific corrective actions[;] . . . and informs the firm of legal actions available to the Commission." U.S. Consumer Prod. Safety Comm'n, *The Regulated Products Handbook* 5 (May 6, 2013) ("Handbook"). Notices of Noncompliance therefore represent the conclusions and advice of agency staff, not of the Commission itself.

Thus the Notices from the Compliance Office hardly constitute the culmination of the Commission's decisionmaking process. For a Notice of Noncompliance does not trigger any of the administrative, civil, or criminal proceedings that the Commission could pursue. If a party ignores a Notice of Noncompliance, "the staff *may request* the Commission approve appropriate legal proceedings, including the issuance of an administrative complaint." *Id.* at 19 (emphasis added). But the power to make a final determination as to whether a violation has occurred and whether to pursue enforcement

8

rests with the Commission itself; its Compliance Office lacks authority to issue binding decisions on behalf of the agency. *See* 15 U.S.C. §§ 1274(a)–(b), 2064(c)–(d). Nor does any statute, regulation, or Handbook language require the Commission to follow the recommendation of its Compliance Office. A Notice of Noncompliance thus constitutes "the ruling of a subordinate official" which, at most, functions "more like a tentative recommendation than a final and binding determination." *See Dalton v. Specter*, 511 U.S. 462, 469–70 (1994) (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 798 (1992)).

Jake's Fireworks nonetheless insists that the Commission has delegated authority to its Compliance Office to issue final determinations on behalf of the agency. But though the Commission *could* delegate this authority to its staff, *see* 15 U.S.C. § 2076(b)(10), the Commission has not done so. In arguing to the contrary, Jake's Fireworks solely relies on 16 C.F.R. § 1000.21, the housekeeping regulation that establishes the Compliance Office's general duties. That provision states that the Compliance Office "conducts compliance and administrative enforcement activities under all administered acts" and "conduct[s] administrative litigation." 16 C.F.R. § 1000.21. The provision lacks any delegation authorizing the Compliance Office to issue final orders binding regulated parties, or to make recommendations that bind the Commission. Rather Section 1000.21 is entirely consistent with the Commission's retention of final decisionmaking authority for itself — the very arrangement that Congress established in the statute. *See* 15 U.S.C. §§ 1274(a)–(b), 2064(c)–(d).

Moreover, the Commission reports that it has made no such delegation to the Compliance Office, either in 16 C.F.R. § 1000.21 or anywhere else. Govt. Br. at 22, 34.

9

We "pay particular attention" to the Commission's views on the meaning of 16 C.F.R. § 1000.21 in light of the agency's obvious expertise in writing and administering its own regulations. *See Vanda Pharm., Inc. v. Ctrs. for Medicare & Medicaid Servs.*, 98 F.4th 483, 491 (4th Cir. 2024) (quoting *County of Maui v. Haw. Wildlife Fund*, 590 U.S. 165, 180 (2020)). Given that Jake's Fireworks's position would turn the agency's decisionmaking hierarchy upside down, we find the agency's interpretation far more persuasive. *See id.*

B.

Examination of the language of the Notices confirms that they convey preliminary findings and advice from agency staff rather than a final determination from the Commission itself.[2] The Notices informed Jake's Fireworks that sampling results indicated violations of the agency's fireworks regulations and stated that "*the staff requests*" that Jake's Fireworks destroy the products. *E.g.,* J.A. 165 (emphasis added). Subsequent Notices stated that "*the staff* reiterates its *requests*." *E.g.*, J.A. 187–88 (emphasis added). The Handbook referenced in the Notices explains the advisory nature of the Notices; the Notices do not command any action. Handbook 5–6. Nor has the Compliance Office even recommended that the Commission take enforcement action. Govt. Br. at 24.

---

[2] Though we think the language of the Notices is consistent with our conclusion, we are also guided by the process set forth in the Commission's governing statutes and regulations. *Soundboard Ass'n*, 888 F.3d at 1267. Regardless of the language used, it is clear that the Notices are nonfinal because the agency has yet to take the steps required before it can order Jake's Fireworks to take action.

Jake's Fireworks argues that the Notices impose an obligation because some of them state that the fireworks "must be destroyed within 90 days from the date of this letter unless an extension of time is requested and approved by" the Compliance Office. J.A. 103. But the same Notice that Jake's Fireworks quotes indicates that these procedures for documenting the destruction of the fireworks apply only if Jake's Fireworks "*chose* to destroy the goods." *Id.* (emphasis added). Other language in the Notice that Jake's Fireworks points to — for example, "it is a prohibited act to introduce or deliver . . . or receive in interstate commerce any banned hazardous substance," J.A. 103–04 — merely track the general statutory prohibition on selling such substances. *See* 15 U.S.C. §§ 1263(a), (c). In sum, the Commission's Compliance Office simply lacks authority to issue binding final orders on behalf of the Commission itself, or to independently pursue enforcement action, rendering this 90-day deadline advisory.

Indeed, when the Commission itself does issue orders, it says so, stating that they are "final decisions and orders" to perform clearly binding commands. *See, e.g.*, Final Decision and Order, *In re Zen Magnets, LLC*, CPSC Docket No. 12–2, at 1, 54–56 (C.P.S.C. Oct. 26, 2017) (ordering that Zen Magnets "shall cease" from selling certain products). The agency's final orders come from the Commission itself, not agency staff in the Compliance Office, and issue only after the Commissioners have voted to authorize an administrative complaint and an administrative law judge has held a hearing. *See id.* at 1, 4–6, 56. None of that has happened here.

In an attempt to salvage its case, Jake's Fireworks relies on precedents arising from other regulatory contexts, each of which differs markedly from the one before us today.

11

For example, *Sackett v. EPA* concerned a compliance order issued via EPA's authority to enter binding administrative orders under the Clean Water Act. 566 U.S. 120, 123 (2012) (citing 33 U.S.C. § 1319(a)(3)). But here the Compliance Office lacks authority to issue binding orders independently of the Commission and the process set forth in its governing framework. And in *U.S. Army Corps of Engineers v. Hawkes Co.*, the Army Corps's own regulations deemed the jurisdictional determination at issue a "final agency action." 578 U.S. at 598 (quoting 33 C.F.R. § 320.1(a)(6)). Here, in contrast, the Commission's Handbook clarifies the Notices are only advisory. Handbook 5, 19. The Notices also have little in common with legislative rules or final certifications issued by federal and state agencies after notice-and-comment. *See Abbott Labs.*, 387 U.S. at 138; *Sierra Club v. W. Va. Dep't of Env't Prot.*, 64 F.4th 487, 496–98, 500 (4th Cir. 2023).[3]

The Notices at issue here simply do not represent the Commission's last word on this matter. They merely provide preliminary findings and warnings by agency staff, like countless other letters and guides that federal agencies issue throughout the year. The position that Jake's Fireworks advances "would quickly muzzle any informal communications between agencies and their regulated communities — communications that are vital to the smooth operation of both government and business." *See Golden*, 599

---

[3] The out-of-circuit cases on which Jake's Fireworks relies similarly provide it little support. *See Ipsen Biopharm., Inc. v. Azar*, 943 F.3d 953, 956 (D.C. Cir. 2019) (agency did not dispute *Bennett*'s consummation prong); *S.F. Herring Ass'n v. U.S. Dep't of Interior*, 946 F.3d 564, 567–68, 578 (9th Cir. 2019) (warning letters became reviewable once Park Service officers relied on them to order fishermen to stop fishing); *CSI Aviation Servs., Inc. v. U.S. Dep't of Transp.*, 637 F.3d 408, 412 (D.C. Cir. 2011) (agency warning letter ripe for review when "taken together" with corresponding final exemption order).

12

F.3d at 432 (quoting *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 428 (D.C. Cir. 2004) (Roberts, J.)).  If the APA made informal advice like these Notices subject to judicial review, it seems "likely that many voluntary and helpful comments from agency staff would be withheld altogether."  *See Sanitary Bd. of Charleston v. Wheeler*, 918 F.3d 324, 338 (4th Cir. 2019).  We decline to adopt that view today.[4]

### III.

For the reasons set forth above, the judgment of the district court is

*AFFIRMED.*

---

[4] Because the Notices do not consummate the agency's decisionmaking process, we need not determine if they have "direct and appreciable legal consequences" under the regulatory scheme.  *See Hawkes*, 578 U.S. at 598 (quoting *Bennett*, 520 U.S. at 178).

13